452

[No. 42585-4-I.   Division One.   July 12, 1999.]
*In the Matter of* J.J.
THE STATE OF WASHINGTON, *Respondent*, v. J.J., *Appellant.*

*Thomas Michael Kummerow* of *Washington Appellate Project*, for appellant.

*David S. McEachran, Prosecuting Attorney,* and *Rosemary Hawkins Kaholokula* and *Eric John Richey, Deputies,* for respondent.

AGID, A.C.J. — When J.J. committed third degree theft while under community supervision, the State revoked his deferred adjudication for a previous crime and charged J.J. with the new crime. J.J. contends that the State could not do both without violating RCW 13.40.070(3) which prohibits the State from modifying community supervision and filing a new charge based on the same conduct. This appeal presents the issue of whether revocation of a deferred adjudication constitutes "modification of community supervision"

for the purposes of RCW 13.40.070(3). We hold that it does not and affirm.

## FACTS

On September 18, 1997, J.J. received an Order of Deferred Adjudication on a second degree theft charge. A week later, John Charleston, the "loss prevention" manager at J.C. Penney's in Bellingham's Bellis Fair Mall, observed J.J. take a tank top and a Nike hat from the store's sporting goods department. Based on this new crime, the State requested revocation of J.J.'s deferred adjudication on the second degree theft charge and charged him by an information filed in the juvenile division of the Whatcom County Superior Court with third degree theft under RCW 9A.56.050.

At the fact-finding hearing before a juvenile court commissioner, J.J. moved to dismiss the third degree theft charge. He argued that because the State had elected to revoke his deferred adjudication for his previous crime, it could not file a separate charge based upon the same conduct under RCW 13.40.070(3). The commissioner denied J.J.'s motion to dismiss, found him guilty as charged, and imposed a standard range sentence. Written findings of fact and conclusions of law were filed on December 17, 1998.[1]

J.J. moved to revise the juvenile court's decision to deny his motion to dismiss. After noting that J.J. had an "excellent argument," the judge affirmed the commissioner's ruling. This appeal followed.

## DISCUSSION

When a juvenile under community supervision

---

[1]When J.J. filed this appeal on April 29, 1998, written findings of fact and conclusions of law had not been entered. Although JuCR 7.11(d) mandates that the State submit written findings of fact and conclusions of law within 21 days of the Notice of Appeal, absent prejudice, late filing of written findings and conclusions does not require dismissal of the charge. *State v. Royal*, 122 Wn.2d 413, 423, 858 P.2d 259 (1993). By failing to mention this issue in his reply brief, filed after the written findings and conclusions were entered, J.J. implicitly concedes that he was not prejudiced by the late filing.

commits a new offense, the prosecutor may file an information or, "[i]n lieu of filing an information or diverting an offense a prosecutor may file a motion to modify community supervision where such offense constitutes a violation of community supervision."[2] In *State v. Murrin*,[3] this court analyzed this statutory language and concluded that "because the Legislature used the words 'in lieu of,' and the ordinary meaning of these words is 'instead of,' the State is prohibited from both seeking modification of community supervision and filing an information based on the same conduct."[4] Neither the State nor J.J. disputes the *Murrin* holding. The issue here is whether the revocation of J.J.'s deferred adjudication can be considered a "motion to modify community supervision" under RCW 13.40-.070(3). If it is, the trial court erred by allowing the State to revoke J.J.'s deferred adjudication *and* charge him with a new crime. This court reviews a trial court's application of law de novo.[5]

At the time of J.J.'s deferred adjudication, RCW 13.40.125 provided that "[a]ny juvenile granted a deferral of adjudication under this section shall be placed under community supervision."[6] "Community supervision" means "an order of disposition by the court" or "an order granting a deferred disposition."[7] The statute further provides that "[a]s a mandatory condition of any term of community supervision, the court shall order the juvenile to refrain from committing new offenses."[8]

J.J. argues that considering RCW 13.40.070(3) and RCW

[2]RCW 13.40.070(3).

[3]85 Wn. App. 754, 934 P.2d 728 (1997).

[4]*Id.* at 759.

[5]*State v. Park*, 88 Wn. App. 910, 914, 946 P.2d 1231 (1997).

[6]This statute was amended in 1997 to replace "deferral of adjudication" with "deferral of disposition." *See* RCW 13.40.127(5).

[7]RCW 13.40.020(4). The 1997 amendments substituted "a deferred disposition" for "a deferred adjudication pursuant to RCW 13.40.125."

[8]RCW 13.40.020(4).

13.40.020(4) together "leads to the logical conclusion that revoking a juvenile's deferred disposition necessarily modifies the community supervision portion of the order of disposition." The State counters that J.J.'s "reliance on *Murrin* is misplaced," because J.J.'s "community supervision was not modified pursuant to RCW 13.40.200(1), but was altogether revoked pursuant to RCW 13.40.125." The State is correct. The resolution of this case depends not on the definition of "community supervision" as J.J. argues, but rather on whether "modification" of community supervision can be read to encompass "revocation."

In *Murrin*, the State sought modification of Murrin's community supervision when he violated its terms by possessing burglary tools and taking a motor vehicle without permission. Based on this conduct, the trial court imposed an additional 15 days detention. When the State later charged Murrin with theft of the motor vehicle, the trial court granted Murrin's motion to dismiss on the basis that RCW 13.40.070(3) required the State to choose between modification or an information.

The trial court in this case distinguished Murrin's situation from J.J.'s on the theory that in *Murrin*, "there was additional punishment imposed," while here, the State sought to reinstate preexisting terms. This distinction comports with the Legislature's choice of terminology in RCW 13.50.070(3). As the *Murrin* court observed, when interpreting a statute "the court should assume that the Legislature meant exactly what it said."[9]

"Modification" is "the act or action of changing something without fundamentally altering it."[10] "Revocation" is "the act by which one having the right annuls something previously done, a power or authority given, or a license, gift, or benefit conferred."[11] Here, when the State moved to revoke J.J.'s deferred adjudication because he had failed to

---

[9]*Murrin*, 85 Wn. App. at 758.

[10]WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1452 (3d ed. 1969).

[11]*Id.* at 1944.

comply with the terms of his supervision, the benefit accorded J.J. was annulled. The underlying disposition was not changed or altered, but was simply reinstated, so the plain language of the statute does not support his argument that the Legislature intended to bar the State from filing an information based on the new crime. It is highly unlikely that the Legislature intended to offer a "free crime" to juveniles who commit new crimes while under a deferred adjudication because the decision to defer is based on the assumption that a juvenile who does not reoffend should be given a chance to go into adulthood with a clean record. We therefore conclude that when a juvenile on community supervision as a condition of a deferred disposition commits a new crime, the State is not required to elect between moving to revoke the deferred disposition and charging the juvenile with the new crime.

Affirmed.

BECKER and ELLINGTON, JJ., concur.

Review denied at 139 Wn.2d 1017 (2000).